JOHN F. GARDNER ET AL., APPLICANTS, v. JACK BREVIS ET AL., RESPONDENTS.

Argued September 20, 1920—Decided September 23, 1920.

The authority conferred by section 2 of *Pamph. L.* 1918, *p.* 137, upon Common Pleas judges to appoint members of the district boards of election is only to be exercised when the county board has not acted, and after notice and an opportunity to be heard.

---

On application for a *mandamus*.

Before Justices SWAYZE, BERGEN and BLACK.

For the applicants, *Merritt Lane.*

Opposed, *John J. Fallon* and *Thomas J. Brogan.*

The opinion of the court was delivered by

SWAYZE, J. As we understand, in the absence of the formal records, there are applications for a *mandamus* and applications for leave to file informations in the nature of *quo warranto* in the name of the attorney-general. The question involved is the title to office of members of the district election boards in Hudson county. The county election board, prior to August 20th, selected the members of the district boards in pursuance of the statute and entrusted the lists to their clerk to file with the county and municipal clerks; he failed to do so until August 23d. On that day there was filed a list of Republican election officers appointed by Judge Doherty. Upon August 25th there were filed lists of Republican election officers appointed by Judges McCarthy and Blair, and on August 30th a list of Democratic election officers appointed by Judge Doherty. The statute requires that the county board shall on or before August 20th in each year certify to the clerk of the county and municipal clerks names of the persons appointed to district boards of registry and election. The statute provides that in case the county board of election shall neglect or refuse to select, appoint and certify the members of the district boards, the judge of the Court of Common Pleas shall between the 20th of August and the 1st of September make such appointments and certifications.

In Hudson county there are three judges of the Court of Common Pleas. None of the lists were certified by all three. The appointments must be without warrant of law unless a single judge can make them. In behalf of the members of the district boards appointed by Judge Doherty it is urged that he acting alone had authority under chapter 48 of the laws of 1918. *Pamph. L., p.* 137. This authority is claimed under section 2, which enacts that any power or authority now conferred by statute on the judge or judges of the Court of Common Pleas in any proceeding or matter may be exercised by either of said judges. The statute fails to point out any way of determining which of the three judges is to make the certificate in case they do not act together. The argu-

ment is that the judge who acts first has jurisdiction necessarily exclusive of the others. To this argument we cannot accede. It would tend to make a race between judges—an unseemly procedure. The legislature certainly contemplated an orderly and seemly procedure. The act of 1918 is a supplement to the act relating to the Court of Common Pleas. It was, therefore, on its face meant to regulate the procedure of a court, and the very essence of court procedure is order and regularity, notice and a chance to be heard. It is true that the question of jurisdiction may depend on priority, but it is never a priority based on a scramble by judges. To avoid such a scramble the court does not act on its own initiative; it acts only when it is called upon to act by a suitor or petitioner. Where the court waits on the initiative of a suitor or petitioner, no other method of determining priority of jurisdiction is needed. The petitioner or suitor may select his judge as he may select the Supreme Court justice to whom he applies for a *certiorari*. The legislature could not have contemplated a judicial scramble for jurisdiction and either meant to leave the decision of what judge should act to the determination of the suitor or petitioner initiating the proceedings or else must have meant that the act of 1918 should not apply. Proceedings in court contemplate a plaintiff (actor) and a defendant (*reus*), as well as a judge (*judex*). 3 *Bl. Com.* 25. The object of the legislature was to empower a judge to act where the county board had not done so, and to conduct in a dignified way that part of the important business of elections. There is another consideration sustaining this view. The judge is authorized to act only in case of the neglect or refusal of the county board of elections to select, appoint and certify the members of the district boards. Whether the county board of elections has in a particular case so neglected or refused is a fact upon which the jurisdiction of the judge depends. He must ascertain the fact. The legislature must have meant that he should ascertain it in the ordinary way, and, since his power to act is a power vested in a judicial officer, in the ordinary way in which judicial officers act. Here the judge was called on to decide whether the

county board of elections had been derelict in the execution of their office, and, in effect, upon the title of members of the district boards to their office. Due process of law required that they should have notice and a chance to be heard.

We find nothing in the case to indicate that the county board was given a hearing. The result is that the appointees of Judge Doherty have no title to the offices they claim, and it would be idle to allow either a *mandamus* or a writ in the nature of a *quo warranto*. The same reasoning applies to the appointees of Judge McCarthy and Judge Blair.

These considerations, however, do not settle the title to office of the appointees of the county board of elections. Their certification was filed three days later than the time prescribed by the statute, and the question is whether this of itself shows that the county board refused and neglected to do what the statute commanded. If they did not refuse and neglect, there is nothing depriving their appointees of their offices. The proof shows that prior to August 20th the county board had done what they were required to do. They had not refused to make appointments; they had not neglected to make appointments. They had made appointments in the usual course and depended upon their clerk to file them with the county clerk and municipal clerks in order to make the certification complete. There was neglect on the part of the clerk of the county board, but the statute does not deprive the appointees of their offices because of the neglect of a mere clerk. The reasons we have already set forth against the appointees of the judges are strong also in favor of the appointees of the county board. The whole electoral machinery was not intended to be dependent upon the action or non-action of a clerical officer.

The clerk is not the servant or employe of the board so that his negligence can be imputed to them. In counties of the first class, like Hudson, the statute requires the appointment of a clerk and not more than two assistant clerks from the competitive class of civil service. *Pamph. L.* 1920, *p.* 641, art. 6, § 17. He is thereby given a more secure tenure than the members of the board. He is given also an adequate

salary. *Pamph. L.* 1920, *p.* 823, art. 30, § 7. He has regular duties, and is therefore a salaried public officer, accountable for his own neglect. The fact upon which the judge was authorized to act does not exist in this case. The title of the appointees of the county board is good. Let the rules be discharged, with costs.